PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 95-6951

_____

Tax Court Docket No. 22193-93


DAVID L. and FAGALE D. GRANT,

                    Petitioners-Appellants,


versus


COMMISSIONER OF INTERNAL REVENUE,

                    Respondent-Appellee.


_____

Appeal from a Decision of the United States Tax Court

_____


**(December 31, 1996)**



Before KRAVITCH and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.


PER CURIAM:

This is an appeal by David L. and Fagale D. Grant from the denial of their motion for an award of administrative and litigation costs resulting from a redetermination by the United States Tax Court of a deficiency asserted by the Commissioner of Internal Revenue ("Commissioner") in their 1990 taxes. The Tax Court entered judgment in their favor, from which judgment the Commissioner did not file an appeal. The Grants subsequently submitted this motion for an award of administrative and litigation costs pursuant to 26 U.S.C § 7430. The Tax Court denied that motion and this appeal followed. For the reasons stated below, we affirm.

<u>FACTS.</u>

The following facts are derived from the evidence constituting the record in this case. From 1982 to 1989, taxpayer David Grant was employed by the State of Alaska ("State") and participated in two State-sponsored retirement programs. One was the Alaska Supplemental Annuity Plan ("SBS"), in which Grant had accumulated over $46,000.00 when he left state service. The other was the Grants' Alaska Public Employees Retirement System ("PERS") account, which had a balance of about $14,600.00 at that time. Upon returning to Alabama where they had previously lived, the Grants ran up debts of approximately $30,000.00 and experienced difficulty in meeting their obligations. After responding to a newspaper advertisement concerning debt consolidation services, the Grants began working with Eddie Johnson, a broker and insurance agent with the Innovative Company ("Innovative"), in an effort to solve their

financial problems. Johnson agreed to help the Grants work out their troubles and to consolidate their payments to their creditors. In January 1991, they began making monthly payments to Innovative which, after deduction of a small fee, were to be distributed among the various creditors. On Johnson's advice, in February, Grant rolled over the funds in his SBS account into an annuity contract with Jackson National Life Insurance Company ("Jackson"). This strategy would permit him to immediately borrow up to ten percent of the amount of the annuity from Jackson.

Grant had decided not to withdraw or transfer the funds in his PERS account because of the adverse tax consequences. Since the State's contributions had not previously been taxed, that portion of the fund, over $9,000.00, would be subject to taxation upon withdrawal. This decision notwithstanding, a form was prepared and sent to the State requesting the release of the funds in the PERS account. On October 24, 1990, a State employee wrote Grant informing him that he would need his wife's consent to withdraw the funds. Fagale Grant went to Innovative and signed a consent form, under the impression that it related to the SBS account. The State issued a check for the balance in the PERS account in November 1990 and mailed it to the address specified in the refund request, a post office box maintained by Maurice Bailey, the owner of Innovative. The check was deposited with the endorsement "For Deposit Only Innovative Co." and what purported to be Grant's signature. No witness at the Tax Court hearing, however, could account for the ultimate disposition of those funds. In January

3

1991, the State filed a Form 1099-R with the Internal Revenue Service ("IRS") reporting the lump sum distribution of Grant's PERS account. Bailey prepared the Grants' 1990 income tax return but did not include as income the taxable portion of the distribution from the PERS account.

In March 1991, the Grants borrowed ten percent of the value of their annuity from Jackson. Shortly thereafter, the Grants received a second check from Jackson for ten percent of the remaining equity in their account. Neither of the Grants had requested this additional sum. They contacted Johnson for an explanation, and he told them he had filed the second application because he thought the first one had been lost. On his advice, the Grants left this check with Johnson, who said he would return it to Jackson. Some time later, the Grants contacted Jackson and were informed that the check had not been returned. In the interim, the Grants became suspicious that Innovative was misapplying some of the monthly payments they were making because they received complaints from their creditors that they were not being paid. The Grants made their last monthly payment to Innovative in June, 1991. They subsequently instituted civil proceedings against the Innovative Company, Bailey, Johnson, and Jackson to recover the second Jackson annuity payment and the misappropriated monthly payments. They obtained a consent judgment against Johnson for $6,325.00 in December 1992.[1]

---

[1]This judgment represented the amount of the second check drawn against the annuity with Jackson, approximately $3900.00, some amount for the misappropriated monthly payments, and the

4

In February 1993, the IRS notified the Grants that they had improperly failed to include the taxable portion of the PERS account lump sum distribution in their taxable income for 1990. The Grants retained an attorney and contacted the State in an attempt to clarify the situation. They did not, however, at that point provide any information which would permit the IRS to definitely conclude that its initial determination was in error. Hearing nothing further, on July 12, 1993, the IRS issued a notice of deficiency, seeking additional taxes of $2,340.00 and interest of $403.00.

By letter dated September 7, 1993, the Grants' attorney informed the IRS that the withdrawal of funds from the PERS account was the fraudulent act of an "insurance agent" retained by the Grants to assist them in their financial matters. The letter further stated that the Grants had retained litigation counsel to sue the agent and his company. Also, according to the letter, the State of Alaska was making a determination as to whether to pursue a fraud claim against the bank which had cashed the check and was planning to reinstate the funds to Grant's account. In a telephone conversation and in a letter dated October 5, 1993, the IRS initially indicated that it would accept this explanation of the matter.

_____

remainder was punitive damages, according to David Grant's testimony. Jackson apparently paid approximately $1000.00 to settle the claim against it. Of that amount, Grant testified that he received approximately $300.00; the remainder apparently went for attorney's fees. This judgment did not include any amounts relating to the PERS account, which the Grants did not yet know had been withdrawn.

The Grants received no formal notification from the agency, however, and filed a petition in the Tax Count challenging the agency's deficiency assessment on October 15, 1993. By letter dated October 27, 1993, the Accounting Services Manager for the State of Alaska informed Grant that the State believed it had handled the matter correctly, that both requests for refunds had been signed by him and accompanied by a notarized signed spousal waiver and that it had issued the checks for both accounts in his name to the address specified in the refund requests. In that official's view, the fact that the Form 1099-R with respect to the PERS distribution sent to Grant's address had not been returned and the fact that Grant had not inquired about the PERS account for three years even though he did not receive the yearly statement or quarterly newsletter sent to all those with active accounts corroborated his view that the account had been properly closed by the State.

The IRS filed its answer to the Grants' petition on November 26, 1993. The case was tried by the Tax Court on April 25, 1994. The Grants, Eddie Johnson and Maurice Bailey testified. In a memorandum opinion issued following the trial, the Tax Court found that Grant had not authorized the withdrawal of funds from the PERS account, that Johnson had forged Grant's signature on several documents, and that the Grants had not received any economic benefit from the amount withdrawn from the PERS account. Accordingly, the Grants were not required to report that amount in their taxable income for 1990. The Commissioner did

not appeal that determination.

The Grants then filed a motion seeking an award of administrative and litigation costs under authority of I.R.C. § 7430 and Rule 231 of the Tax Court Rules of Practice and Procedure. The Tax Court concluded that the government's position, in both the administrative proceedings and the litigation, was substantially justified and denied the motion. The Grants then filed this appeal.

## STANDARD OF REVIEW.

We review the denial of a motion for an award of administrative and litigation expenses for an abuse of discretion. In re Rasbury, 24 F.3d 159, 165-68 (11th Cir. 1994).

## DISCUSSION.

A taxpayer who prevails in an administrative or judicial proceeding may be awarded his reasonable costs incurred in such a proceeding. 26 U.S.C. § 7430(a). Under the statute, a judgment for costs may be entered in favor of the taxpayer if he 1) was the "prevailing party," 2) has exhausted all available administrative remedies and 3) did not unreasonably protract the proceedings. In this case, the Commissioner conceded that the Grants had exhausted their administrative remedies and had not unreasonably protracted the proceedings. Therefore, the only issue remaining was whether the Grants were the prevailing parties as defined in the statute.

To qualify as a "prevailing party," a taxpayer must establish that 1) the position of the government in the proceeding was not substantially justified, 2) the taxpayer has substantially

7

prevailed and 3) the taxpayer satisfies the applicable net worth requirements. 26 U.S.C. § 7430(c)(4)(A). Again, the Commissioner conceded that the Grants had substantially prevailed and that they met the net worth requirements. The only disputed question was and is whether the government's position was substantially justified.

The government's position is substantially justified if there is a reasonable basis for it both in law and in fact. See Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). That inquiry is directed to the government's position at two distinct stages: the date the IRS issued the notice of deficiency in the administrative proceedings, July 12, 1993, and the period following the filing of the government's answer in the Tax Court litigation, November 26, 1993. See 26 U.S.C. § 7430(c)(7); Huffman v. C.I.R., 978 F.2d 1139, 1148 (9th Cir. 1992). In this case, the government's position at these two stages was essentially the same: that the taxpayers had constructively received as income during 1990 the taxable portion of the distribution from the PERS account because that amount had been paid to the taxpayers' agent at their direction. The taxpayers bear the burden of proving that the IRS's position in the proceeding was not substantially justified in law and in fact. See T.C.R. 232(e); Cooper v. U.S., 60 F.3d 1529, 1531 (11th Cir. 1995).

On appeal, the Grants contend that the government's position at the relevant times was unreasonable with respect to both law and fact. In their view, in formulating its legal position in this case, the government ignored the fundamental rule that an amount is

8

not to be included in gross income unless the taxpayer received some benefit from the income item. Further, they argue that the government ignored those cases holding that funds received and misappropriated by an agent do not constitute income for the taxpayer when the taxpayer was unaware of the misappropriation and received no benefit from the funds. Finally, the taxpayers summarily urge that the factual record demonstrates that the government's position was unreasonable in these circumstances.

The government, on the other hand, maintains that the taxpayers have waived any argument regarding the legal reasonableness of its position because they did not raise that issue in the Tax Court. It points to language in the Tax Court's opinion on this motion which notes that "[p]etitioners have not argued that respondent's position was not reasonable as a matter of law." Memorandum Opinion filed Aug. 8, 1995, at 10. The government appears to be correct in this instance. As a general rule, a taxpayer may not address an issue on appeal which it has not first presented to the Tax Court. See, e.g., Estate of Quirk v. C.I.R., 928 F.2d 751, 756-759 (6th Cir. 1991); Shades Ridge Holding Co., Inc. v. U.S., 888 F.2d 725, 727-28 (11th Cir. 1989). Further, assuming that this argument is not barred, it is without merit. Since the receipt and deposit of these funds in an Innovative account for the use and benefit of the taxpayers would have, as a matter of law, resulted in the receipt of taxable income by the taxpayers, the IRS's position was legally reasonable. See 2 Mertens Law of Federal Income Taxation §§ 17.15-17 (1996).

9

The government also alleges that its position was clearly factually reasonable in light of the information available to it on the date it issued the notice of deficiency and the date it filed its answer to the petition. Following the IRS's initial contact with the Grants in February 1993, the taxpayers informed the agency that they had not authorized the release of the funds in the PERS account and believed it to be the result of fraud. They did not provide the IRS with any documentation to support these claims until the September 7, 1993, letter from their lawyer to the service. Therefore, since the agency was in possession of a facially valid Form 1099-R from the State documenting a distribution from the PERS account to the Grants, it was plainly reasonable for the agency to proceed to the next step and issue a notice of deficiency on July 12, 1993.

While, on initial receipt of the September 7, 1993, letter, the service indicated that the information contained therein might provide a basis for resolving the issue in the taxpayers' favor, it soon became apparent that several of the representations contained in the letter were inaccurate. Specifically, the IRS learned that the Grants had not filed a lawsuit against Johnson or Innovative for recovery of the funds from the PERS account and that the State was not pursuing a fraud claim against any bank and, further, was not planning to reinstate the disbursed funds to Grant's PERS account. The agency also learned 1) that the taxpayers had authorized Johnson to purchase an annuity with funds from Grant's SBS account, 2) that the taxpayers had contracted with Innovative

10

to receive money from them and distribute it among their creditors, 3) that the check issued to Grant for the amount in his PERS account had apparently been endorsed by Grant and deposited in an Innovative account and 4) that several documents filed with the State in connection with the withdrawal of funds from the two accounts contained what purported to be Grant's signature, as well as the notarized signature of his wife.

Given that these were the facts available to the IRS at the time the government had to formulate its answer to the taxpayers' Tax Court petition, its answer was clearly factually reasonable. To an impartial observer, it could not have been clear at that time who had authorized the withdrawal from the PERS account and on whose behalf those funds had and were being used. Indeed, it was not until the trial of this case, at which time the judge found the testimony of the Grants to be credible and that of Eddie Johnson not to be credible, that this matter could properly be resolved in the taxpayers' favor.[2] Since the judge who heard this testimony and had to clear up the conflicting accounts of the events here

_____

[2]Appellants contend in their brief that they supplied additional information to the government on December 20, 1993, which rendered the government's position in the litigation unreasonable. (Appellants' Brief at 17). Their only citation for this proposition is to the motion for administrative and litigation expenses signed by their attorney. No documents allegedly submitted to the respondent on that date are attached to the motion. ( See R1-9). As the Tax Court observed, "petitioners failed to establish what information was actually provided to respondent on that date. Therefore, the Court is unable to determine if the information provided to respondent at that time was sufficient to warrant respondent's concession of the issue. After December 20, 1993, respondent did not receive any other information from petitioners until the trial on April 25, 1994." (Order filed August 8, 1995, at 12).

also ultimately found that the government's position was substantially justified, that conclusion carries considerable weight.  Therefore, we conclude that the Tax Court did not abuse its discretion in denying the petitioners' motion for an award of administrative and litigation expenses.

Accordingly, the judgment of the Tax Court is AFFIRMED.